**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  08a0062n.06**
**Filed:  January 16, 2008**

**No. 06-4153**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMADOU MODIBO KANOUTE, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF A FINAL ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| MICHAEL MUKASEY, Attorney General of the United States, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

BEFORE:  MERRITT, COLE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Amadou Modibo Kanoute appeals from the decision of the Bureau of Immigration Appeals ("BIA") adopting and affirming the Immigration Judge's ("IJ") May 11, 2006, denial of petitioner's claims for withholding from removal and protection under the Convention Against Torture ("CAT").  Kanoute disputes the IJ's finding that it was not probable that Kanoute would face persecution and/or torture if removed to the Ivory Coast, and argues that the BIA violated his due process rights by not reviewing the case file and supporting briefs.  For the reasons below, we hold that petitioner's arguments are without merit.

I.

Petitioner, a citizen of the Ivory Coast, moved to the United States in 1994. At the hearing before the IJ, he explained that he came to the United States to play professional soccer, an endeavor that was ultimately unsuccessful. During his time in the United States, petitioner married and fathered two children.

Petitioner was convicted in New York of attempted second-degree assault; specifically, he attempted to cause physical injury to another by means of a dangerous instrument. On January 20, 2006, the Department of Homeland Security initiated removal proceedings against petitioner under 8 U.S.C. § 1227(a)(1)(A) (JA 42). The IJ determined that Kanoute's assault conviction was not a "particularly serious crime," and Kanoute was therefore eligible to apply for withholding from removal and protection under the CAT. Petitioner subsequently applied for both.

In his application for withholding of removal and protection under the CAT, Kanoute claims persecution on account of his political opinions. Petitioner states that he is a member of the Djoula tribe and considers himself a member of the opposition party Rally of Republicans ("RDR"), which is comprised primarily of Muslims and Djoula in the northern portion of the Ivory Coast. Petitioner reports that his uncle was imprisoned for serving as general counsel to the RDR and died while in prison. He further states that this uncle's son – petitioner's cousin – was president of a college chapter of the RDR and was beaten, and later shot, when he reported the death of his father. He also states that his parents received exorbitant tax assessments from the government and were told to pay or face imprisonment or death. According to Kanoute, his father's businesses were either destroyed or burned by the government or government sympathizers. He alleges that his parents fled to Mali

to escape this persecution. Kanoute also states that his brother, who was active in the RDR in college, was injured during a pro-RDR demonstration and required hospitalization. Petitioner fears that if he was forced to return to the Ivory Coast he would be subject to similar persecution.

Based on petitioner's testimony, the IJ found that Kanoute could suffer possible persecution upon his return to the Ivory Coast, but could not conclude that such persecution was probable, as required for withholding of removal. The IJ specifically noted that Kanoute was never harmed during the seventeen-year period that he lived in the Ivory Coast. The IJ further pointed out that petitioner's prior political activity was very minor, and of much less significance than the activities of his uncle and cousin, and that this minor activity occurred approximately twelve years prior. Lastly, the IJ found it significant that Kanoute had not sought asylum or withholding of removal prior to his apprehension. The IJ also relied on this rationale in denying petitioner's CAT claim, finding that Kanoute failed to demonstrate a probability of torture if returned to the Ivory Coast.

On August 9, 2006, the BIA adopted and affirmed the decision of the IJ and dismissed Kanoute's appeal. The BIA adopted the IJ's opinion regarding Kanoute's withholding from removal and CAT claims without providing additional rationale. Moreover, although petitioner did not seek asylum, the BIA nevertheless indicated that Kanoute was ineligible for such relief because he had not filed an application within one year of entry. The present petition for review followed.

II.

The Attorney General may "not remove an alien to a country if [he] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). An alien

seeking withholding of removal must demonstrate that there is "a clear probability" that he would

be subject to persecution if he were to return to his native country. *Mikhailevitch v. INS*, 146 F.3d

384, 391 (6th Cir. 1998). Kanoute must therefore show that it is "more likely than not" that he will

be persecuted if he is returned to the Ivory Coast. *INS v. Stevic*, 467 U.S. 407, 424 (1984);

*Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003), *modified on other grounds by*

*Almuhtaseb v. Gonzales*, 453 F.3d 743, 746 (6th Cir. 2006).

Where the BIA summarily adopts the reasoning of the IJ, we review the IJ's decision directly

to determine whether the decision should be upheld on appeal. *Gilaj v. Gonzales*, 408 F.3d 275,

282-83 (6th Cir. 2005) (citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003)). When, however,

the BIA adopts the IJ's decision, but also supplements that opinion with its own reasoning, we

review both the BIA's and the IJ's opinions. *Id*. Here, the BIA wholly adopted the IJ's reasoning

as to Kanoute's withholding from removal and CAT claims, but provided additional analysis as to

why Kanoute was ineligible for asylum, a claim not advanced by petitioner. Thus, we need only

review the findings and evidentiary basis contained within the opinion of the IJ.

In reviewing the factual conclusions of the IJ, we apply the substantial evidence standard.

*Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992). Substantial evidence is a deferential

standard which "plainly does not entitle a reviewing court to reverse the finding of a trier of fact

simply because it is convinced that it would have decided the case differently." *DiCicco v. INS*, 873

F.2d 910, 912 (6th Cir. 1989) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

Rather, the IJ's finding must be upheld unless the evidence "not only *supports* [a contrary] conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). In conducting this review, we may not re-weigh the evidence or replace the IJ's factual findings with our own. *Klawitter*, 970 F.2d at 151-52. We conclude that application of the substantial evidence standard in the instant case compels us to affirm the IJ's decision.

Petitioner concedes that removal is warranted where an alien's claim of possible persecution is premised solely on general country conditions. He contends, however, that his claim is supported by evidence of persecution of similarly situated individuals and therefore removal is improper. Petitioner's argument is largely based on dicta from our opinion in *Castellano-Chacon*, 341 F.3d at 546-48, wherein we stated that withholding of removal claims *may* be meritorious when the claim is supported with evidence of persecution to similarly situated individuals. The relevant portion of the opinion reads:

> Castellano attempted to make his case by showing that a person in Honduras with tattoos is, more likely than not, tortured by the government. If Castellano had presented specific evidence in support of the contention that the majority of persons similarly situated in terms of gang status or tattoos were subject to torture, he might have made his case.

*Id*. at 552. Petitioner argues that he has offered evidence of persecution of similarly situated individuals, namely his uncle, cousin, and parents. He contends that this evidence demonstrates that it is more likely than not that he would face persecution if he was returned to the Ivory Coast. We conclude that this argument is flawed for two reasons.

First, the portion of *Castellano-Chacon* relied upon by Kanoute does not stand for the proposition that an alien is automatically entitled to withholding from removal once he proffers evidence of persecution of similarly situated individuals. Our choice of the word "may," as opposed to "would," is a clear indication that such evidence is not, standing alone, dispositive. Evidence of the persecution of similarly situated individuals merely assists the IJ in resolving the question of whether it is more than likely that an alien would be persecuted if returned to his native country.

Second, Kanoute cannot be considered similarly situated to the individuals that he describes as being subject to persecution. Petitioner's uncle and cousin were deeply involved in political movements in the Ivory Coast. Petitioner's uncle was general counsel to the RDR, and Kanoute's cousin served as president of his college chapter of the RDR. By contrast, Kanoute's past political participation consisted of attending a few marches and rallies some thirteen years ago,[1] and he admits to only "slightly" following political events in the Ivory Coast today. Further, petitioner has not provided evidence that he has ever suffered persecution at the hands of the government or pro-government forces.

Even assuming petitioner's minor political activities were substantial enough to attract the attention of hostile factions within the Ivory Coast, there is no evidence to suggest that they would recognize him or otherwise seek him out over a decade after he left the country. Indeed, the IJ found

---

[1]The United States contends that petitioner's political activity was limited to only attending "a single RDR rally." This assertion is contradicted by the record. The government apparently misinterprets Kanoute's statement, translated from French, wherein he stated that he participated in "the protest that wanted to install democracy in the Ivory Coast." The government apparently reads this statement as referring to a single protest instead of an ongoing series of protests.

"[e]ven before his departure [Kanoute's] political activities were minor in nature . . . [Kanoute] has not shown that it is probable, as opposed to possible, that he would be recognized and persecuted upon [his] return." This is sufficient evidence for the IJ to have concluded that Kanoute was not similarly situated to the individuals he described as being subject to persecution. *See also Castellano-Chacon*, 341 F.3d at 552 (holding that tattooed gang member Honduran was not similarly situated to other tattooed gang member Hondurans, and noting "Castellano's evidence described the targeting of young gang members, generally twenty-three-years-old or younger, who are not similarly situated since Castellano is now twenty-seven years-old.").

Petitioner also states that his parents were subject to persecution by the government of the Ivory Coast, as demonstrated by the government's tax levy against Kanoute's father and the destruction of Kanoute's father's businesses by pro-government forces. Kanoute, however, has not provided any evidence concerning the extent of his parents' political involvement in the Ivory Coast. This being the case, it is difficult to determine whether the tax assessment against Kanoute's parents was a legitimate exercise of the government's power or whether it was mere pretext for political persecution. The IJ, however, was in the best position to make this factual determination and implicitly did so, by finding that it was not probable that Kanoute would face persecution upon his return to the Ivory Coast.

Upon review of the transcripts and record, it is clear that the IJ had a sufficient basis upon which to make its decision. Kanoute admitted that his reason for coming to the United States was not to escape persecution, but rather to play professional soccer. Petitioner admitted further that he

only slightly followed the politics of the Ivory Coast. The IJ found that "[Kanoute]'s failure to seek asylum or withholding of removal up until the time he was apprehended by the DHS and placed in proceedings, many years after his entry into the United States, casts some doubt on the probability that he would be harmed upon return." We conclude that Kanoute's minor political activity, the length of time that has elapsed since such activity, and the fact that Kanoute has never suffered any persecution, are sufficient bases for the IJ to have decided that it was not probable that Kanoute would be persecuted or tortured if removed to the Ivory Coast.

III.

Petitioner also argues that the BIA abused its discretion by summarily affirming the IJ's findings without reading the record or supporting briefs. Petitioner's claim is based solely on the language of the BIA's opinion wherein the Board adopts and affirms the IJ's order, but also provides additional analysis of why petitioner is time-barred from seeking asylum:

> The respondent is ineligible for asylum because of his failure to demonstrate that he filed an asylum claim within one year of his entry. *See* section 208(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a)(2)(B). The respondent also failed to demonstrate changed circumstances affecting his eligibility or extraordinary circumstances relating to the delay in filing an application within one year. We adopt and affirm the decision of the Immigration Judge, regarding the respondent's applications for other forms of relief. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994).

Because petitioner did not pursue an asylum claim on appeal, he believes this indicates that the BIA did not review the file and that this omission amounts to a deprivation of his due process rights. Petitioner's argument might be persuasive had the Board described why petitioner's *claim*

for asylum was denied — indeed this would demonstrate an erroneous understanding of the issues before the court. The Board, however, merely described why petitioner was ineligible for asylum as a matter of law. This reading of the BIA's opinion is buttressed by the fact that the opinion treats the asylum issue as separate and distinct from the issues analyzed by the IJ, as demonstrated by the BIA's explicit affirmance of only the latter. Thus, we conclude that the BIA committed no error.

IV.

For these reasons, we deny the petition for review.