NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0250n.06
Filed: April 1, 2009

No. 08-3695

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NICHOLAS KIMBUGWE SEMPAGALA, | ) ) ) | PETITION FOR REVIEW OF ORDER OF BOARD OF IMMIGRATION APPEALS |
| Petitioner, | ) ) | |
| v. | ) ) | |
| ERIC H. HOLDER, JR., Attorney General of the United States, | ) ) ) | |
| Respondent. | ) | |

BEFORE: KEITH, SUTTON, and GRIFFIN, Circuit Judges.

**KEITH, Circuit Judge.** Petitioner Nicholas Sempagala ("Sempagala"), a native and citizen of Uganda, seeks this court's review of the denial by the Board of Immigration Appeals ("BIA") of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The Board dismissed Sempagala's appeal on May 9, 2008, finding that he "failed to establish that a reasonable person in his circumstances would fear persecution upon return to Uganda," and that "the threat of harm to people who are similarly situated to the [petitioner] is not so systemic or pervasive as to amount to a pattern or practice of persecution." For the reasons that follow, we **DENY** Sempagala's petition for review and **AFFIRM** the BIA's decision.

**I.**

Sempagala is a 32-year-old, married male.  On August 24, 2007, Sempagala left the United States and entered Canada seeking refugee status, which was denied the same day. Sempagala then applied for admission into the United States, claiming that he was afraid to return to Uganda.  Because he did not possess a valid entry document, the Department of Homeland Security ("DHS") initiated removal proceedings against him, pursuant to 8 U.S.C. § 1229(a), by filing a Notice to Appear on August 25, 2007.

Sempagala later admitted during a hearing before an Immigration Judge ("IJ") that on May 29, 1999, he knowingly presented himself for inspection and admission to a U.S. immigration officer at John F. Kennedy International Airport in New York, using false documentation.  He procured entry into the United States as a B-1 visitor for business under the name of Byoma Bosco Rutagarama - a name not his own.  The immigration court ordered Sempagala removed to Uganda.

Sempagala responded by applying for asylum, withholding of removal, and relief under the CAT on October 10, 2007.  On December 26, 2007, the IJ denied Sempagala's application. The BIA subsequently reviewed the IJ's decision *de novo* and dismissed the appeal in an order and opinion dated May 9, 2008.  We review the BIA's order as the final agency decision.  *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007).

**II.**

Sempagala testified before the IJ that his asylum claim was based on his alleged fear of persecution upon returning to Uganda because he is bisexual and had a sexual relationship with

an older man before he left Uganda for the United States. Sempagala acknowledged that he felt trapped in the relationship, which began in 1995 and ended in May of 1999, when he left Uganda.

Sempagala further testified that, as of the day of the hearing, he had never had any problems with the Ugandan government and that he does not have any proof anyone in Uganda knows that he considers himself bisexual. By his own admission, Sempagala also did not have proof to corroborate his claim that he is, in fact, bisexual. He additionally conceded that he does not fear being forced into the same-sex relationship he left in Uganda, if he were required to return. In fact, he stated that the main reason he came to the United States was to work in order to financially support his family back in Uganda.

The IJ found Sempagala to be a credible witness but held for several reasons that he failed to establish eligibility for asylum and withholding of removal on the merits. First, Sempagala did not establish past persecution, since there was no evidence in the record he had ever had any problems with the Ugandan government or organizations or individuals the government was unable to control. Second, Sempagala failed to show a belief or characteristic sought to be overcome by a persecutor, nor that any persecutor is aware or could become aware that Sempagala possesses this belief or characteristic. The IJ cited Sempagala's failure to present evidence suggesting that anyone in Uganda knows he is bisexual and has engaged in bisexual conduct, and that Sempagala was able to engage in a same-sex relationship for four years, without anyone knowing. Sempagala's testimony was also undermined by his failure to

submit or explain why he could not submit corroborating evidence from his wife verifying that she knows he is bisexual and has shared this information with others.

Additionally, the IJ found there is no evidence that individuals with an "alternative sexual orientation" are subject to persecution or torture in Uganda, even while there is evidence that they face widespread discrimination and legal restriction.

The BIA agreed with the IJ that Sempagala failed to meet his burden of proof as to asylum, withholding of removal and relief under the CAT. The BIA rested its decision on an absence of past persecution, and Sempagala's failure to establish a reasonable likelihood of future persecution upon returning to Uganda after a ten-year absence, given that he has kept his bisexuality a secret, and he has failed to demonstrate that anyone has an interest in persecuting him based on his sexuality. The BIA also found that Sempagala's cited fear that persecutors in Uganda will learn about his sexuality from these proceedings is unwarranted, since asylum proceedings are confidential. Finally, the BIA held "that the threat of harm to people who are similarly situated to [Sempagala] is not so systemic or persuasive as to amount to a pattern or practice of persecution."

**III.**

On review, we find no basis to disturb the BIA's decision because substantial evidence supports the agency's decision. *See Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008) (noting that we must uphold the Board's determination as to whether a petitioner is eligible for asylum and withholding of removal if "'supported by reasonable, substantial, and probative evidence on the record considered as a whole'") (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

Additionally, Sempagala has failed to present any evidence in the record that compels a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); *see Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2005).

To establish eligibility for asylum, Sempagala must show that he qualifies as a "refugee," defined as suffering past persecution or having a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.13(b); 8 U.S.C. § 1101(a)(42)(A). The Real ID Act of 2005, which governs this case,[1] additionally requires Sempagala to demonstrate that his membership in a protected group is at least one of the central reasons he has been or will be persecuted.[2] 8 U.S.C. § 1158(b)(1)(B)(i). Sempagala concedes that he has not suffered past persecution but challenges the Board's finding that he does not have a well-founded fear of future persecution based on his sexual orientation.

There was substantial evidence available for the BIA to find that Sempagala failed to satisfy his burden of proving the requirements of a well-founded fear of future persecution, which include: (1) fear of suffering persecution in his country of nationality on account of a protected ground; (2) a reasonable possibility of suffering such persecution upon return to that country; and (3) an inability or unwillingness to return to, or avail himself of the protection of, that country because of such fear. 8 C.F.R. § 1208.13(b)(2)(i). Sempagala does not have to

---

[1]*See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006) (applications for asylum filed on or after May 11, 2005 are subject to the Real ID Act of 2005).

[2]We do not reach this inquiry here, because Sempagala has failed to demonstrate past persecution or a well-founded fear of future persecution.

demonstrate a reasonable possibility he would be singled out individually for persecution if (1) he "establishes . . . a pattern or practice" in Uganda "of persecution of a group of persons similarly situated" to him on a protected ground, and (2) his inclusion with such group of persons. 8 C.F.R. § 1208.13(b)(2)(iii). Sempagala can demonstrate neither.

## A. Reasonable Possibility

Based on the evidence in the record, we cannot overturn the BIA's decision to deny Sempagala's asylum claim. First, Sempagala's testimony that his primary reason for being in the United States is economic severely undercuts his claim that he fears persecution. Second, Sempagala has not provided any "testimonial or documentary evidence," and admitted that he has no such proof, that anyone in Uganda is aware of his bisexuality or past bisexual conduct. *Matter of Mogharrabi*, 19 I&N Dec. 439, 446-47 (BIA 1987) (noting the well-founded-fear standard for asylum requires that an alien's facts show a persecutor who is aware or could become aware that the alien possesses one of the enumerated characteristics); *see also Pilica v. Ashcroft*, 388 F.3d 941, 955 (6th Cir. 2004); *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994). Even as to whether or not his wife knows he is bisexual, Sempagala provides no explanation at all addressing his failure to corroborate his testimony by having her testify. *See Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (stating that "'where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided . . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof'") (quoting *In re S-M-J*,

21 I.&N. Dec. 722, 724-26 (BIA 1997)).  Further, Sempagala's stated fear that in the course of his attorney's investigation news of his bisexuality was leaked is based purely on supposition.

Not only is there an absence of evidence that people are aware of Sempagala's bisexuality, there is also an absence of evidence that people could become aware.  Sempagala was able to conceal from both the government and his family his same-sex relationship from 1995 until 1999.  This relationship ended nearly ten years ago, and as Sempagala concedes, he has no fear he will be forced back into it if he returns to Uganda.  He is also currently married to a woman and has not engaged in a same-sex relationship since he left Uganda in 1999.  Based on the evidence presented in the record, Sempagala has failed to demonstrate how anyone could become aware of his bisexuality.  Finally, there is not the slightest shred of evidence in the record that anyone has an interest in targeting Sempagala for persecution.

**B.  "Pattern or Practice"**

In addition to failing to demonstrate a reasonable possibility that he will be singled out individually for persecution, Sempagala has also failed to establish a "pattern or practice" in his country of persecution of bisexual or homosexual individuals.  8 C.F.R. § 1208.13(b)(2)(iii)(A). To demonstrate persecution "the conduct on which the application for asylum is based must go beyond what might reasonably be characterized as mere harassment . . . ".  *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005); *see also Kaba*, 546 F.3d at 748 (stating that "'persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty").  Instead, "[p]ersecution is an extreme concept that

does not include every sort of treatment our society regards as offensive." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (citation and internal quotation marks omitted).

Based on an independent review of the record, we find the evidence does not demonstrate the level of "persecution" necessary to warrant asylum relief. There is evidence of: (1) a constitutional amendment making marriage lawful only when it is between a man and a woman; (2) sodomy laws criminalizing same-sex sexual relations; (3) isolated instances of government acts of discrimination; and (4) private acts of intolerance and harassment. While deplorable, the evidence does not demonstrate treatment toward those with "alternative sexual orientations" that is so systemic and severe that we are compelled to find a pattern or practice of persecution.

Similarly, Sempagala's claims for withholding of removal and protection under the CAT do not warrant relief. Because Sempagala has failed to meet the lower burden of proof for asylum, he has necessarily failed to satisfy the clear probability standard required to establish eligibility for withholding of removal. *See Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006). Sempagala also asserts a claim for relief under the CAT using the same evidence submitted to demonstrate eligibility for asylum and withholding of removal. None of this evidence suggests that it is more likely than not that Sempagala would be tortured if returned to Uganda. 8 C.F.R. § 1208.16(c)(2); *Berri,* 468 F.3d at 398.

Accordingly, we **DENY** Sempagala's petition for review and **AFFIRM** the BIA's decision.