NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0461n.06

Case No. 23-3842

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Nov 21, 2024 |
| | | KELLY L. STEPHENS, Clerk |

| | | |
|---|---|---|
| ELIZABETH GRISELDA SIMON-DOMINGO; B. E. P. S. (a minor child), | ) ) ) | |
| Petitioners, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | |
| Respondent. | ) | O P I N I O N |

Before: CLAY, WHITE, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Elizabeth Griselda Simon-Domingo, a native and citizen of Guatemala, petitions for review of a final order of the Board of Immigration Appeals ("BIA" or "the Board") affirming an immigration judge's ("IJ") denial of her applications for asylum, withholding of removal, and protection under Article III of the Convention Against Torture ("CAT"). Because the BIA's ruling is supported by substantial evidence, we deny the petition for review.

## I.

### A.      Factual Background

Elizabeth Simon-Domingo is a native and citizen of Guatemala.  She and her daughter, B.E.P.S.,[1] a minor whose application is a derivative rider to her mother's,[2] arrived in the United States on or about June 19, 2014.  Mother and child were not admitted or paroled by an immigration officer.  Within days of their arrival, the Department of Homeland Security initiated removal proceedings against Simon-Domingo and B.E. by filing a Notice to Appear ("NTA"), which charged them as removable under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).  At a subsequent hearing, Simon-Domingo admitted to the above facts about their arrival and conceded the charge of removability.  Simon-Domingo later filed timely applications for asylum, withholding of removal, and protection under the CAT, based on her political opinion, imputed political opinion, and membership in two particular social groups (singular "PSG").  The two PSGs she proposed were "family members of high profile community leaders opposing hydro-electric dams in Barillas" and "indigenous female survivors of child sexual abuse."  (AR 96).

Simon-Domingo is an indigenous Q'anjob'al woman from Santa Cruz Barillas in the state of Huehuetenango, Guatemala.  Simon-Domingo's sister Hermelinda is a leader in the indigenous movement there that opposed and protested the construction of hydroelectric dams in the region on the grounds that the projects would ruin local land and violate indigenous land and water rights. Hermelinda is a human-rights and environmental activist.  She has spoken out both locally and

---

[1] In accordance with the Federal Rules of Appellate Procedure, we refer to the minor child by her initials.  *See* Fed. R. App. P. 25(a)(5).

[2] In view of the derivative nature of the minor child's application for asylum, we refer to Petitioners collectively as "Simon-Domingo" when referencing the asylum claims.

internationally to denounce the Guatemalan government's human-rights abuses and retaliation against her and fellow protestors. In May 2012, former Guatemalan President Otto Pérez Molina responded to protests against the hydroelectric dams by declaring a "state of siege" in Santa Cruz Barillas, which included suspending constitutional rights and placing the army in control of the area. (AR 360). His administration sent an estimated 500 military troops and 350 police officers to Santa Cruz Barillas. The authorities issued an arrest warrant for Hermelinda and other local leaders, which drove Hermelinda into hiding. The United Nations Office of the High Commissioner for Human Rights declared several of the government's arrests of these leaders to be illegal. Before leaving Guatemala to come to the United States, Simon-Domingo participated, alongside her sister Hermelinda, in demonstrations against hydroelectric projects in different towns in Huehuetenango. But Simon-Domingo does not describe herself as a leader in the movement opposing the hydroelectric dams.

Simon-Domingo lived with her sister Hermelinda in Santa Cruz Barillas, during the better part of her childhood from 1997 to 2012. From the time Simon-Domingo was about thirteen years old and continuing until she was approximately seventeen years old, Hermelinda's husband, Enrique, repeatedly raped and sexually abused Simon-Domingo.[3] Simon-Domingo did not disclose the abuse to her family or report it to authorities before leaving Guatemala. Subsequent events prompted Simon-Domingo to disclose her own earlier abuse to the family and to unsuccessfully urge family members to report Enrique's actions toward her and another young family member to authorities. According to Simon-Domingo, Enrique was angry to learn that she

---

[3] Enrique is alternatively referred to as "Enrico" because of a phonetic spelling in transcripts of proceedings before the IJ.

had told her family about his abuse, and she fears that Enrique would harm her and her child should they return to Guatemala.

## B.       Procedural Background

An immigration judge held an individual hearing on the merits of Simon-Domingo's application for asylum, withholding of removal, and withholding under the CAT in August 2019 and later issued a decision denying the application.  The IJ found Simon-Domingo's testimony credible.  But the IJ found that Simon-Domingo's proposed PSGs were not cognizable, and that she did not establish past persecution or a well-founded fear of future persecution by the government or by a private actor who the government is unable or unwilling to control.  The IJ recognized the sexual abuse Simon-Domingo suffered as a minor at the hands of her brother-in-law as a past harm, but found that she failed to establish that his actions were because of her membership in the PSG of "indigenous female survivors of child sexual abuse."  (AR 96).  As such, she could not establish a nexus between her membership in this PSG and her abuse by her brother-in-law.  The IJ also found that Simon-Domingo failed to demonstrate either past persecution or a well-founded fear of future persecution for her remaining claims.  Because Simon-Domingo did not satisfy the lower burden of proof required for asylum, the IJ concluded that she could not satisfy the higher burden of proof, requiring her to demonstrate clear probability of persecution upon return to Guatemala, for withholding of removal.  Finally, the IJ found that Simon-Domingo failed to demonstrate under the CAT that if she were removed to Guatemala, it would be more likely than not that she would be tortured by or with the consent of government officials.

Simon-Domingo appealed the IJ's decision.  The BIA affirmed the IJ's decision in a separate opinion.  After denying Simon-Domingo's request for termination of removal, the BIA

addressed her asylum claim.  The Board found that Simon-Domingo waived the nexus issue as to her claim premised on the proposed PSG "indigenous female survivors of sexual abuse" because she failed to dispute the IJ's finding that her sexual abuse was not because of her membership in the group.  (AR 4).  The BIA therefore affirmed the IJ's determination that Simon-Domingo did not establish a nexus between the harm she suffered and a protected ground and was not eligible for asylum or withholding on this basis.

As for her claims based on her political opinion, imputed political opinion, and membership in the PSG of "family members of high-profile community leaders opposing hydro-electric dams in Barillas," the BIA agreed with the IJ that Simon-Domingo did not establish a well-founded fear of future persecution.  For this conclusion, the BIA endorsed the IJ's reasoning that the hydroelectric project in Santa Cruz Barillas had ended and Simon-Domingo's family members, particularly Hermelinda, "have not experienced any issues since the project ended."  (AR 5).  Simon-Domingo's failure to satisfy the lower burden of proof required for asylum led the BIA to conclude that she necessarily failed to satisfy the higher burden of proof for withholding of removal.  Finally, the BIA found that Simon-Domingo waived her CAT claim because she did not challenge the IJ's denial of her application for protection under the Convention.

## II.

### Jurisdiction and Standard of Review

This court has jurisdiction to review the final decision of the BIA affirming the IJ's denial of asylum, withholding of removal, and relief under the CAT.  *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005).  Where the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming, we review the Board's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009), *abrogated on other grounds by Loper Bright*

*Enters. v. Raimondo*, 144 S. Ct. 2244, *as recognized in Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024). But we review the IJ's decision to the extent the BIA affirms and expressly adopts the IJ's reasoning. *Id.*

We consider questions of law de novo. *Id.* We review findings of fact for asylum eligibility under the substantial-evidence standard. *Gaye v. Lynch*, 788 F.3d 519, 525 (6th Cir. 2015). Nexus determinations are findings of fact. *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 847 (6th Cir. 2023). Under the substantial-evidence standard, we "defer to the agency's findings of fact if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Gaye*, 788 F.3d at 525 (quoting *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012)). That is, "[t]o reverse under the substantial evidence standard, the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the [applicant] alleged." *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005) (quoting *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003)); *see also* 8 U.S.C. § 1252(b)(4)(B).

## III.

### A.     Failure to Exhaust

As an initial matter, the government argues that Simon-Domingo waived or forfeited some issues by either failing to raise them below or failing to raise them in her opening brief. We conclude that Simon-Domingo forfeited those issues.

We review "a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). We look to a petitioner's brief before the BIA to determine which claims she adequately raised. *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020); *see also Lopez-Hernandez v. Garland*, No. 22-3990, 2023 WL 4626785, at *4 (6th Cir. July 19, 2023). The administrative-exhaustion requirement codified in 8 U.S.C.

§ 1252(d)(1) is not a jurisdictional bar, but rather a claims-processing rule subject to forfeiture and waiver. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023).

### 1. *Asylum and Withholding of Removal—Past Persecution*

In her appeal brief to the BIA, Simon-Domingo did not challenge the IJ's conclusion that she failed to show a nexus between the past harm she suffered from her brother-in-law and her membership in the PSG "indigenous female survivors of sexual abuse." The BIA therefore properly treated the issue as abandoned and affirmed the IJ's finding. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016); *Chiroy-Melchor v. Barr*, 763 F. App'x 463, 466 (6th Cir. 2019) (explaining that an issue is abandoned if a petitioner does not present any argument addressing the issue in briefing before the Board). As such, Simon-Domingo has failed to exhaust her administrative remedies on this question. And the government has properly raised the issue in its briefing. We are therefore constrained from addressing this unexhausted claim. *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 (2019) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (alteration in original))). Without a nexus between the past harm inflicted by Enrique and her proposed PSG of "indigenous female survivors of sexual abuse," Simon-Domingo's asylum and withholding of removal claims based on this PSG fail, and we need not reach the other elements of those claims.

Simon-Domingo's remaining claims of past persecution fail for similar reasons. Simon-Domingo's opening brief in this court includes a sub-heading stating, "petitioner suffered past persecution on account of her particular social group and political opinion." (Pet. Br., Page 19). But Simon-Domingo concedes that she "did not suffer any harm due to membership in this particular social group" of "family members of high-profile community leaders opposing hydro-

electric dams in Barillas." (Pet. Br., Page 25). More important, Simon-Domingo did not raise the argument that she suffered past persecution resulting from her membership in this group before the Board. Indeed, the BIA neither listed the issue among Simon-Domingo's challenges on appeal nor addressed this unraised argument. "And we generally may not address an issue that the Board did not reach." *Mbonga v. Garland*, 18 F.4th 889, 893 (6th Cir. 2021). Because the BIA did not address past persecution based on Simon-Domingo's political opinions, imputed opinions, or membership in the PSG of family members of high-profile community leaders opposing hydroelectric dams in Barillas, we do not reach it here.

### 2. *Convention Against Torture*

In her appeal brief to the BIA, Simon-Domingo did not contest the IJ's denial of her CAT claim. But in her brief to this court, Simon-Domingo argues that she implicitly established eligibility for CAT relief by demonstrating eligibility for asylum and withholding of removal. In response, the government properly challenges Simon-Domingo's failure to raise the issue before the BIA as a failure to exhaust administrative remedies for any CAT claim. And where the government properly raises this failing, we may not excuse it. *Eberhart*, 546 U.S. at 19. Because Simon-Domingo did not raise any CAT claims before the BIA, she failed to exhaust any such claim.

### B. Future Persecution

Simon-Domingo argues that the record establishes that she is entitled to asylum and withholding of removal based on a well-founded fear of future persecution due to her political opinion, imputed political opinion, and her proposed PSG of "family members of high-profile community leaders opposing hydro-electric dams in Barillas." (Pet.'s Br., Page 24–25). We conclude that substantial evidence supports the BIA's decision to the contrary.

Persecution is not statutorily defined, but we have broadly explained that it involves "the infliction of harm or suffering by the government . . . to overcome a characteristic of the victim." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 997 (6th Cir. 2009)). But "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (quoting *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995)); *see also id.* ("[H]arassment or discrimination without more does not rise to the level of persecution." (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389–90 (6th Cir. 1998))). The types of actions that might "cross the line from harassment to persecution" include, but are not limited to, "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005). To prevail, Simon-Domingo must establish that she faces a reasonable possibility of persecution if asylum is not granted. *See* 8 C.F.R. § 1208.13(b)(2)(i)(B).

1.      *Asylum*

An applicant may establish a well-founded fear of future persecution if she can show that her fear is both subjectively genuine and objectively reasonable. *See* 8 C.F.R. § 1208.13(b)(2); *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006). Typically, applicants use testimony before the IJ to establish subjective fear. *See Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005). And an applicant can demonstrate the objective reasonableness of such fear by presenting evidence that she would be "'singled out individually' for persecution," *Trujillo Diaz v. Sessions*, 880 F.3d 244, 250 (6th Cir. 2018), or by showing "a pattern or practice of persecution" against similarly situated groups or individuals, *Akhtar*, 406 F.3d at 404 (quoting *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004)). A well-founded fear does not require that persecution be more likely than not.

*See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). Rather, the term allows for "flexibility" to "respond to situations involving political . . . dissidents and detainees throughout the world." *Id.* at 449 (quoting H.R. Rep. No. 96-608, at 9 (1979)).

That said, an applicant attempting to establish a likelihood of being singled out for persecution in her home country "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Trujillo Diaz*, 880 F.3d at 250 (quoting *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004)). The feared persecution must relate to the petitioner as an individual, and not simply to the general population. *Id.* For example, in *Pilica v. Ashcroft*, where "[t]here [wa]s no indication that [petitioner] [wa]s on some governmental blacklist," and the government had never sought petitioner out personally, he could not establish a well-founded fear. 388 F.3d 941, 954–55 (6th Cir. 2004). We rejected Pilica's claimed fear of future persecution because "the persecutor must be aware the [petitioner] possesses the relevant belief or characteristic, must have the capability of punishing the [petitioner], and must have the inclination to punish the [petitioner]." *Id.* (citing *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994)).

When considering whether a petitioner has established a well-founded fear based on a pattern or practice of persecution, it is "necessary . . . to weigh evidence of general conditions in the country of origin and the foreign government's history of treatment of others engaged in similar activities." *Ali*, 366 F.3d at 411 (quoting *Perkovic*, 33 F.3d at 621). But the harm must be "so systemic or pervasive as to amount to a pattern or practice of persecution." *Sempagala v. Holder*, 318 F. App'x 418, 419 (6th Cir. 2009) (internal quotation marks omitted). The petitioner must also show that she is truly similarly situated to a persecuted group. *Kanoute v. Mukasey*, 259 F. App'x 847, 850 (6th Cir. 2008). For example, where a petitioner's uncle and cousin were "deeply

involved in political movements," but petitioner's political participation consisted only of attending "a few marches and rallies some thirteen years ago," the petitioner was not similarly situated to the individuals subject to persecution. *Id*. And while acts of violence against family members can provide evidence of a well-founded fear, "absent a pattern of persecution tied to the asylum applicant himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution." *Akhtar*, 406 F.3d at 405 (quoting *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th Cir. 2004)); *see also Jing Hu v. Holder*, 342 F. App'x 94, 99 (6th Cir. 2009).

Simon-Domingo's evidence does not compel us to reject the BIA's decision that she has failed to demonstrate a well-founded fear of future persecution based on political opinion, imputed political opinion, and her proposed PSG of family members of high-profile community leaders opposing hydroelectric dams in Barillas. *See* 8 U.S.C. § 1252(b)(4)(B). Indeed, Simon-Domingo has offered no evidence establishing that she would be singled out individually for persecution or that there is a pattern or practice of persecution against groups or individuals similarly situated to her.

Resisting this conclusion, Simon-Domingo describes how officers repeatedly stopped her in the street and demanded that she tell them where her sister was. She says, "I am scared that I might be arrested or killed just because I am her sister and they might think they can control her by hurting her family members." (AR 351–52). Simon-Domingo believes the same people who threatened her sister will find her and harm her. And her sister described how the security personnel from the hydroelectric company threatened her and tried to run her down with a car. But Simon-Domingo's credible testimony about the threats against her sister includes no specific information showing a threat of individual persecution against Simon-Domingo. *See Trujillo Diaz*,

880 F.3d at 250. As we have previously established, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution for an asylum applicant on their own. *Akhtar*, 406 F.3d at 405.

Simon-Domingo also has not established a pattern or practice of persecution against groups or individuals similarly situated to her. Simon-Domingo has identified one group of similarly situated individuals—family members of high-profile community leaders opposing hydroelectric dams in Barillas. To be sure, the record shows that the Guatemalan police threatened and harassed family members of indigenous community leaders opposed to the dams. Based on a report from the Guatemala Human Rights Commission, during the 2012 state of siege in Santa Cruz Barillas, the soldiers engaged in practices that would severely test U.S. civil-rights laws and offend universal notions of acceptable human-rights practices. (AR 361). Moreover, spouses and family members of leaders have suffered intimidation, extortion, and threats. But the record contains no evidence of the government detaining or killing leaders' family members or severely restricting their liberties on an ongoing basis. It also lacks evidence of ongoing harassment of indigenous leaders' families at the levels documented in 2012 and 2014. Taken as a whole, the record does not compel a reasonable factfinder to conclude that there is a current pattern or practice of persecution against family members of indigenous leaders opposed to the dams. *See Mostafa*, 395 F.3d at 624.

Simon-Domingo also describes protesters against hydroelectric projects as similarly situated to her. Country reports describe detentions and killings of leaders and activists in the movement, but not of mere participants. For example, the United States State Department 2018 Human Rights Report on Guatemala documents at least nine rural, indigenous activists and human-rights defenders who were killed or died under disputed circumstances between May and

September 2018. It notes that "some of the killings appeared to be politically motivated, and all of the cases remained under investigation at year's end." (AR 236). But these reports refer to leaders and activists, not to mere participants like Simon-Domingo.

Simon-Domingo explained in her personal statement that she attended meetings and protests in different towns and that she passed out pamphlets, made signs, and encouraged others to join the movement against the hydroelectric dams. But she does not claim that she took a leadership role like her sister or other individuals who have been detained or killed or gone into hiding. In this way, she more resembles the unsuccessful petitioner in *Kanoute*, who attended a few rallies and marches but was not a political leader like his uncle or cousin. *Kanoute*, 259 F. App'x at 850.

In sum, there is substantial evidence to support the BIA's conclusions that Simon-Domingo has not established that she was singled out for persecution or that there is a pattern or practice of persecution against similarly situated groups or individuals. She has therefore failed to establish a well-founded fear of future persecution. And because persecution is a necessary component of an asylum claim, the BIA correctly found that Simon-Domingo does not qualify for asylum.

2.    *Withholding of Removal*

A higher burden of proof is required to establish entitlement to withholding of removal. While Simon-Domingo must merely show a "reasonable possibility" that she will suffer persecution to obtain asylum, 8 C.F.R. § 1208.13(b)(2)(i)(B), for withholding of removal, she must show a "clear probability" of future persecution. *Al-Ghorbani*, 585 F.3d at 993–94. Having failed to establish the former, she cannot establish the latter. There is substantial evidence to support the BIA's conclusion that Simon-Domingo has not shown a clear probability of future persecution, for the same reasons that she has not shown a reasonable possibility.

- 13 -

**IV.**

For the reasons above, we DENY Simon-Domingo's petition for review.