RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARIBEL TRUJILLO DIAZ,

*Petitioner,*

No. 17-3669

*v.*

JEFFERSON B. SESSIONS, III, Attorney General,

*Respondent.*

---

On Petition for Review from the Board of Immigration Appeals.
No. A 088 922 375.

Decided and Filed:  January 17, 2018

Before:  MERRITT, MOORE, and BUSH, Circuit Judges.

---

## COUNSEL

**ON BRIEF:**  Kathleen C. Kersh, Emily M. Brown, ADVOCATES FOR BASIC LEGAL EQUALITY, INC., Dayton, Ohio, for Petitioner.  Brooke M. Maurer, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

## OPINION

---

JOHN K. BUSH, Circuit Judge.  In this immigration case, Maribel Trujillo Diaz petitions for review of an order denying her motion to reopen removal proceedings.  The United States Board of Immigration Appeals ("BIA") ruled that Trujillo Diaz failed to establish a prima facie case of eligibility for asylum or withholding of removal under the Immigration and Nationality Act ("INA" or "Act") because she failed to show that she would be singled out individually for persecution based on her family membership.  The BIA reiterated this finding in ruling that

Trujillo Diaz failed to establish a prima facie case of eligibility for protection under the Convention Against Torture. Because the BIA failed to credit the facts stated in Trujillo Diaz's declarations, and this error undermined its conclusion as to the sufficiency of Trujillo Diaz's prima facie evidence, we hold that the BIA abused its discretion. We further hold that the BIA abused its discretion in summarily rejecting Trujillo Diaz's argument that she could not safely relocate internally in Mexico for purposes of showing a prima facie case of eligibility for relief under the Convention Against Torture. Thus, we vacate the order of the BIA and remand for further proceedings consistent with this opinion.

**I**

Petitioner Trujillo Diaz is a Mexican citizen who entered the United States in February 2002. She was apprehended by Immigration and Customs Enforcement ("ICE") in 2007 and placed in removal proceedings. On July 11, 2012, Trujillo Diaz had a merits hearing in her immigration proceeding. She sought asylum, withholding of removal under the INA, withholding of removal under the Convention Against Torture, and voluntary departure. During her hearing, Trujillo Diaz testified that she feared for her safety in Mexico because she believed the drug cartel, La Familia, would seek revenge against her and her family for her brother's refusal to work for them and his subsequent fleeing to the United States.

The immigration judge found that Trujillo Diaz's asylum application was untimely filed, rendering her ineligible for asylum and requiring her claim to be assessed under the higher "clear probability of persecution" standard for withholding of removal. Although he found Trujillo Diaz to be a credible witness, the immigration judge ultimately denied her application for asylum and withholding-of-removal relief but granted her request for voluntary departure. In finding that she could not meet her burden of proof to establish a clear probability of future persecution, the immigration judge relied on the fact that the cartel had not harmed or threatened her or anyone else in her immediate family besides her brother who refused to join the cartel. Trujillo Diaz filed an appeal, but in May 2014, the BIA dismissed it, again reiterating that she had not established a clear probability of persecution in Mexico because "her parents and two siblings ha[d] not been harmed by the gang." Trujillo Diaz did not file a petition for review.

Nevertheless, Trujillo Diaz was allowed to remain in the United States under an ICE order of supervision. She received work authorization and remained here until April 2017. During this time, she regularly reported to her prescheduled ICE check-ins.

In February 2017, Trujillo Diaz learned that her father had been kidnapped by the Knights Templar, a Mexican cartel. According to Trujillo Diaz's father, during his kidnapping, his captors told him they were looking for "Omar Daniel," Trujillo Diaz's brother, who had previously refused to join the La Familia cartel. "The men" told him that they "wanted to find Omar Daniel because they were upset that he would not work for the gang" and that "[t]hey were very angry that they could not find Omar Daniel because he had fled to the United States." They mentioned Trujillo Diaz by name, telling her father that they "knew [he] was the father of Omar Daniel and Maribel," and that they "knew that Maribel had gone to the United States too." They threatened to "hurt the rest of [his] family if they could not get their hands on Omar Daniel and Maribel."

Based on this new information, Trujillo Diaz filed a motion to reopen her immigration proceedings and a motion to stay removal. Because her motion to reopen was filed years after her removal proceedings had closed, she sought reopening under an exception to the time limit based on changed country conditions in Mexico. Along with her evidence of changed country conditions, Trujillo Diaz also filed, among other things, a personal declaration, a declaration from her father in which he described his kidnapping, and a declaration from an expert witness concerning the threat of future harm to Trujillo Diaz at the hands of the Knights Templar because of her brother's failure to comply with the cartel's demands. In her motion, Trujillo Diaz alleged that she feared returning to Mexico because she believed that the Knights Templar cartel that kidnapped her father was targeting her and her family to get revenge for her brother's fleeing the country after refusing to join the La Familia cartel.

Two days after she filed her motions, ICE apprehended Trujillo Diaz outside her home, detained her, and scheduled her removal for April 11, 2017. On April 10, the BIA denied her stay of removal but took no action on her motion to reopen. Trujillo Diaz filed a petition for review of the denial of the stay and an emergency motion to stay removal. This court denied her

motion to stay and dismissed the petition for review on April 11, 2017. Trujillo Diaz was deported eight days later.

On May 24, 2017, the BIA denied Trujillo Diaz's motion to reopen her removal proceedings, finding that she had not demonstrated prima facie eligibility for asylum, withholding of removal, or protection under the Convention Against Torture.[1] This petition for review followed.

## II

### A. Standard of Review

We review the BIA's denial of a motion to reopen immigration proceedings for abuse of discretion. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). We will find an abuse of discretion if the BIA's denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citation omitted). In determining whether the BIA abused its discretion, we look only at "the basis articulated in the decision and [we] may not assume that the [BIA] considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004).

### B. Discussion

Motions to reopen immigration proceedings are generally "disfavored," in light of the strong public interest in the finality of removal orders. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *INS v. Abudu*, 485 U.S. 94, 107–08 (1988) ("Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." (quoting *INS v. Jong Ha Wang*, 450 U.S. 139, 143 n.5 (1981))). Evincing the importance of finality, both temporal and numerical limits apply to motions to reopen. *See* 8 U.S.C. § 1229a(c)(7)(A), (C); 8 C.F.R.

---

[1]Although Trujillo Diaz had already been deported at the time of the BIA's decision, the BIA maintained jurisdiction to complete its review of her motion to reopen proceedings. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also Pruidze v. Holder*, 632 F.3d 234, 235 (6th Cir. 2011) (holding that the BIA has jurisdiction to consider motions to reopen filed by applicants who have departed the United States subject to an order of removal).

§ 1003.2(c). Generally, a motion to reopen must be filed within ninety days of the final administrative decision. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).

There is an exception to these temporal and numerical limits, however, for motions "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3); *Alizoti*, 477 F.3d at 451–52; *Haddad v. Gonzales*, 437 F.3d 515, 517–18 (6th Cir. 2006). Trujillo Diaz filed her motion to reopen under this "changed country conditions" exception.

The Supreme Court has identified "at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008) (quoting *Doherty*, 502 U.S. at 323). When the board denies relief on a particular ground, we review only that ground. *See Daneshvar*, 355 F.3d at 626; *Hernandez-Ortiz v. INS*, 777 F.2d 509, 517 (9th Cir. 1985) ("When the Board restricts its decision [refusing to reopen] to whether the alien has established a *prima facie* case it is only this basis for its decision that we review."); *see also Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397 (1974) ("[A]n agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." (internal quotation marks omitted)).

The BIA denied Trujillo Diaz's motion to reopen on the ground that she failed to establish a prima facie case for any of the relief she sought: asylum, withholding of removal under the INA, or withholding of removal under the Convention Against Torture. As explained below, we find that the BIA abused its discretion in reaching this conclusion.

>    i.    The BIA abused its discretion when it found that Trujillo Diaz failed to present prima facie evidence that she would be singled out individually for persecution on the basis of a protected ground.

The BIA correctly noted that Trujillo Diaz's motion to reopen was required to be "supported by evidence that . . . demonstrates *prima facie* eligibility for relief." To present a prima facie case for relief, the movant need not make a "conclusive showing" that she will ultimately obtain relief. *Vata v. Gonzales*, 243 F. App'x 930, 947 (6th Cir. 2007) (quoting *In re S-V-*, 22 I. & N. Dec. 1306, 1307 (BIA 2000)). But she must present evidence that "reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Alizoti*, 477 F.3d at 452 (quoting *In re S-V-*, 22 I & N Dec. at 1308).

For asylum and withholding of removal, one of the statutory requirements for eligibility is that the applicant show a "well-founded fear of persecution" (for asylum) or that the applicant's "life or freedom would be threatened" (for withholding of removal) on account of a protected ground—"race, religion, nationality, membership in a particular social group,[2] or political opinion." 8 U.S.C. §§ 1101(a)(42) (asylum); 1231(b)(3) (withholding of removal). One method for proving this "well-founded fear of persecution" or "threat to life or freedom" is by establishing a likelihood of the applicant's being "singled out individually" for persecution on the basis of a protected ground. 8 C.F.R. §§ 1208.13(b)(2), 1208.16(b)(2); *see Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005).

An applicant who seeks to establish a likelihood of being "singled out individually" for persecution "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Harchenko v. INS.*, 379 F.3d 405, 410 (6th Cir. 2004) (citation omitted). "The feared persecution must relate to the alien individually, not to the population generally." *Ibid.* (citation omitted).

---

[2]Here, the BIA recognized that membership in a family can constitute membership in a "particular social group" and therefore a protected ground under the INA for purposes of obtaining asylum and withholding of removal. *See, e.g.*, *Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009). The BIA did not deny Trujillo Diaz's motion to reopen on the ground that she failed to establish that her family constituted a "particular social group," so we do not address that aspect of her case. *See Daneshvar*, 355 F.3d at 626.

So, evidence of persecution in the applicant's country of removal, without some connection to the applicant herself, will not suffice. For example, we have found that an applicant's evidence of "articles and reports" demonstrating human-rights violations in Ukraine failed to demonstrate an "individualized" fear of persecution because there was no evidence showing that those conditions would affect the applicant. *See ibid.*; *see also Vuthi v. Gonzales*, 209 F. App'x 470, 473 (6th Cir. 2006) (upholding denial of motion to reopen in part because articles and reports did not support an individualized fear of persecution). Similarly, not even "acts of violence against an alien's family members" necessarily suffice to present an individualized fear of persecution unless those acts are "tied to the asylum applicant himself or herself." *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th Cir. 2004); *see also Nyonzele v. INS*, 83 F.3d 975, 983 (8th Cir. 1996) (determining that applicant did not have a well-founded fear of future persecution even though his father had been murdered by government officials for his political beliefs because there was no evidence that the government sought to persecute the applicant for his father's political opinions).

By contrast, however, we and our sister circuits have found a real threat of individual persecution when an applicant presented evidence describing threats of harm directed at the applicant. *See, e.g.*, *Mapouya v. Gonzales*, 487 F.3d 396, 413 (6th Cir. 2007) (holding that in light of applicant's submission of two letters from independent sources in the Republic of Congo that showed a threat of harm to him, substantial evidence did not support finding that applicant lacked a well-founded fear of future persecution in Congo); *Xiu Zhen Lin v. Mukasey*, 532 F.3d 596, 597 (7th Cir. 2008) (overturning BIA's denial of motion to reopen where applicant submitted a letter from the governing body of her village stating that it was aware that she had given birth to a third child in the United States and that she "certainly will be subjected to sterilization procedures" unless she obtained citizen or permanent-resident status or an advanced degree in the United States); *Shardar v. Attorney Gen. of U.S.*, 503 F.3d 308, 316–17 (3d Cir. 2007) (concluding that affidavit from applicant's brother showed a significant likelihood that applicant would be subjected to particularized persecution when the affidavit stated that individuals associated with a political party had targeted applicant's family members for persecution because of their association with an opposing party, and these individuals had made a specific inquiry about applicant).

In the present case, Trujillo Diaz alleges that she fears returning to Mexico because she believes that the Knights Templar, a prominent cartel, is targeting her (along with the rest of her family) to get revenge for her brother's fleeing the country in 2010 after refusing to join La Familia, a cartel that was prominent at that time. As evidence of this, Trujillo Diaz presented a sworn declaration from her father in which he stated that in 2014 he was kidnapped by members of the Knights Templar, and that during that kidnapping, the cartel members explicitly mentioned Trujillo Diaz and her brother and said that the whole family would suffer if the cartel members could not "get their hands on" Trujillo Diaz or her brother. In his declaration, Trujillo Diaz's father stated that during the kidnapping, his captors told him they were part of the Knights Templar and that "they knew [he] was the father of Omar Daniel and Maribel." Further, they specifically told him that "they wanted to find Omar Daniel because they were upset that he would not work for the gang" and that they "were very angry that they could not find Omar Daniel because he had fled to the United States." The gang members also said to him that they "knew that Maribel had gone to the United States" and they threatened to "hurt the rest of [his] family if they could not get their hands on Omar Daniel and Maribel."

Based primarily on her knowledge of her father's kidnapping, including the details of what he told her that his captors said to him, Trujillo Diaz submitted her own sworn affidavit declaring that she and her family have a fear of being targeted by the Knights Templar because Omar refused to join the cartel, La Familia, and that "those bad men still want to hurt us to take revenge."

After reviewing her evidence, the BIA determined that Trujillo Diaz had not made a prima facie showing of eligibility for asylum and withholding of removal because she failed to show that "she would specifically be targeted . . . due to her family membership." The BIA based this determination on its finding that Trujillo Diaz presented no actual evidence (as opposed to generalized conclusory speculation) that the persecution against her father and the threats against Trujillo Diaz were motivated by family membership, as opposed to general criminal violence, which would not satisfy the statutory requirements for relief. The BIA provided the following analysis:

> [T]here is no indication, beyond the respondent's and her father's generalized, conclusory speculation, that the cartel members who have recently threatened and/or harmed the respondent's father were actually motivated by his [family] membership . . . . [Her father's kidnapping] happened years after the 'La Familia Michocana' cartel's attempt to recruit her brother and it was the Knights Templar, a different cartel, who kidnapped her father some 5 year [sic] later. The correlation of these events to the cartel's actions toward her father, if any, is unclear from the evidence provided.

So according to the BIA, Trujillo Diaz failed to show a likelihood that she would specifically be targeted on account of her familial membership because the primary evidence she submitted to show this—her father's declaration—is speculative and conclusory. The BIA found his declaration speculative and conclusory because it determined that the evidence does not connect his kidnapping to his son's refusal to join the La Familia cartel.

But the only way that the BIA could have deemed that connection "unclear" is if it had discredited Trujillo Diaz's father's declaration. His declaration explicitly links his kidnapping (and the threats of harm to Trujillo Diaz) to his and his daughter's familial ties to his son, who refused to join the cartel. In his declaration, he described the Knights Templar members' statements that revealed the correlation between his kidnapping and his son's refusal to join the La Familia cartel: (1) they wanted to find Omar Daniel because they were angry that he had refused to join the cartel and fled to the United States; (2) they knew Trujillo Diaz's father was the father of Omar Daniel and Trujillo Diaz; and (3) they would hurt the rest of his family if they "could not get their hands on Omar Daniel and Maribel." Trujillo Diaz's father did not speculate or draw conclusions as to the Knights Templar's motivation; he relayed precisely what they told him. Thus, the BIA discredited Trujillo Diaz's evidence of familial motivation. And because it dismissed this motivation, it determined that Trujillo Diaz's fear was not of being targeted because she was part of a particular social group, but rather just a general fear of crime. *See* BIA Decision at 4 (referring to "the generalized nature of [Trujillo Diaz]'s fear of future harm"). The BIA provided no other rationale for rejecting Trujillo Diaz's prima facie case of eligibility for asylum and withholding of removal under the INA. Looking only to what the BIA said in its opinion, as we must, *see Daneshvar*, 355 F.3d at 626, we find that this was an abuse of discretion.

The BIA's role in reviewing a motion to reopen is like a trial court's role in reviewing a motion for summary judgment. *See Haftlang v. INS*, 790 F.2d 140, 143 (D.C. Cir. 1986) ("In both cases the purpose of the inquiry is to isolate cases worthy of further consideration; in neither case is the court or agency to assess the *credibility* of the evidence."). Therefore, in adjudicating a motion to reopen, the BIA "must accept as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be inherently unbelievable." *Ibid.* (internal quotation marks omitted).[3] The purpose of this rule is to ensure that the applicant has had her day in court to demonstrate the truth of facts alleged. *Ibid.*

To discredit facts in an affidavit, the BIA, not this court, must make the determination that a declaration is "inherently unbelievable." *Id.* at 144, n.2; *see Reyes v. INS*, 673 F.2d 1087, 1090 (9th Cir. 1982) (distinguishing prior case finding no abuse of discretion by the Board because the Board found the evidence to be inherently unbelievable). Here, the BIA did not explicitly find that Trujillo Diaz's father's declaration was "inherently unbelievable." Nor did it make any findings that would indicate that it reached this conclusion. It did not find any internal inconsistencies in her father's declaration. *See, e.g.*, *Fessehaye*, 414 F.3d at 755. It did not find that her father's declaration was "at odds with other materials" submitted by her. *Ibid.*; *see Husyev v. Mukasey*, 282 F. App'x 619, 622 (9th Cir. 2008). And the BIA made no determination that Trujillo Diaz's father's affidavit was incompatible with some other incontrovertible piece of evidence. *See Fessehaye*, 414 F.3d at 755. Because the BIA made no such determination here, it should have accepted as true the facts contained in the declaration. When this is done, the BIA's

---

[3]This rule is widely applied by our sister circuits. *See M.A. A26851062 v. U.S. INS*, 858 F.2d 210, 216 (4th Cir. 1988) (stating rule), *on reh'g sub nom. M.A. v. U.S. INS*, 899 F.2d 304 (4th Cir. 1990); *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005) (same); *Gebremichael v. INS*, 10 F.3d 28, 40 (1st Cir. 1993) (stating that for purposes of a motion to reopen "common notions of fair play and substantial justice generally require that the Board [and, thus, the reviewing court] accept as true the facts stated in an alien's affidavits") (alteration in original); *Shardar*, 503 F.3d at 317 (stating rule and emphasizing that applicant's brother's affidavit, which indicated that perpetrators specifically asked about applicant's whereabouts, "must be accepted as true at the motion-to-reopen stage"); *Alanwoko v. Mukasey*, 538 F.3d 908, 914 (8th Cir. 2008) (accepting applicants' evidence as true, but denying motion to reopen because evidence did not establish a relationship between an attack and Muslim persecution of Christians); *Fessehaye v. Gonzales*, 414 F.3d 746, 755 (7th Cir. 2005) (accepting as true applicant's affidavit on motion to reopen proceedings where affidavit contained no internal inconsistencies that called into question its veracity and was not "at odds with other materials" that applicant submitted in support of her motion to reopen).

conclusion that "there is no indication" that the cartel members were motivated by familial membership cannot be sustained.

The reason the BIA provided for rejecting Trujillo Diaz's evidence of familial motivation was that it was "generalized, conclusory speculation." Of course, the BIA has the authority to reject a motion to reopen when it is supported only by conclusory evidence. *See Zhang*, 543 F.3d at 855. But Trujillo Diaz's father's affidavit contained concrete, factual assertions as to the familial motivation behind his kidnapping and the threat of harm to Trujillo Diaz. He described a specific incident, the kidnapping that he suffered. He conveyed the threats that the Knights Templar members made to him regarding Trujillo Diaz and the rest of his family. And he restated the motivation behind the Knights Templar's actions as relayed to him by them. Although broad deference is accorded to the BIA in evaluating motions to reopen, the BIA cannot deem reasonably specific evidence speculative or conclusory.

The BIA's failure to credit Trujillo Diaz's evidence of familial motivation permeated its order and directly led to the conclusion that Trujillo Diaz failed to establish a prima facie case of eligibility for asylum and withholding of removal. After discrediting her evidence that she would specifically be targeted because of her familial membership, the BIA found that Trujillo Diaz's fear of future harm was merely a "generalized" fear of future harm, and not a fear of persecution that is protected under the Act. This finding resulted in the BIA's "afford[ing] limited weight" to the declaration submitted by Trujillo Diaz's expert, which included testimony that retaliatory violence against family members of those who refused to join cartels is widespread in Mexico, including among members of the Knights Templar, and that the Mexican government is complicit in the illegal activity of the Knights Templar.[4] Had the BIA properly construed Trujillo Diaz's father's affidavit, it may have afforded more weight to her expert's

---

[4]The BIA also discredited Trujillo Diaz's expert's declaration because his conclusions "appear[ed] to be drawn primarily from the account of recent events"—i.e., her father's kidnapping—"as relayed by" Trujillo Diaz, who lacked "personal knowledge of these events." But Trujillo Diaz's declaration made clear that she was describing what her father told her, and her account of those events was consistent with her father's declaration. In preparing his declaration, the expert reviewed Trujillo Diaz's supporting documents, which included her father's declaration. Thus, it is unclear to us why the BIA discredited the expert's affidavit. Without finding any inconsistencies between Trujillo Diaz's affidavit and her father's, there is simply no "rational explanation" for discrediting the expert's declaration on these grounds. *See Allabani*, 402 F.3d at 675. This constituted an abuse of discretion.

testimony and may have found that she established a likelihood that she would be "singled out individually" for persecution because of her membership in her family.

The BIA also determined that Trujillo Diaz's changed-country-conditions evidence "does not support [her] contention that she would specifically be targeted . . . due to her family membership." According to the BIA, the reports reflect that the violence in Trujillo Diaz's hometown "stems from a territorial dispute between rival cartels, is widespread, and affects the populace in that area as a whole." Evaluating Trujillo Diaz's changed-country-conditions evidence in this manner was within the discretion of the BIA, and the BIA provided a rational explanation for refusing to find that this evidence showed that she would specifically be targeted. *See, e.g.*, *Mirza v. Gonzales*, 148 F. App'x 467, 470 (6th Cir. 2005) (deferring to the BIA's conclusion that articles fail to show an objectively reasonable fear of persecution). But this provides no rational explanation for rejecting Trujillo Diaz's evidence of individualized fear— her father's affidavit describing his kidnapping and the direct threats against his family and Trujillo Diaz. It was this evidence that Trujillo Diaz submitted to show that she individually would be subject to more than general criminal acts that affect the rest of the population. *See Akhtar*, 406 F.3d at 405–06 (6th Cir. 2005) (recognizing that membership in a family targeted for persecution may suffice to establish a well-founded fear of persecution if there is evidence beyond mere family membership tying the applicant family member to the persecution).

In sum, the BIA abused its discretion in finding that Trujillo Diaz failed to present prima facie evidence that her fear of persecution, or the threat to her life or freedom, was related to her family membership. Because this was the basis for the BIA's decision to deny her motion to reopen her proceedings, on remand it should consider the remaining aspects of her prima facie case for relief. *See* 8 C.F.R. §§ 1208.13(b)(2), 1208.16(b)(2).

ii.    <u>The BIA abused its discretion when it found that Trujillo Diaz failed to present a prima facie showing of eligibility for withholding of removal under the Convention Against Torture.</u>

The BIA determined that Trujillo Diaz "failed to make a prima facie showing that she will more likely than not be tortured by, at the instigation of, or with consent or acquiescence of public officials . . . upon her repatriation." It provided two reasons for this conclusion:

(1) "there is no reliable evidence that the Knights Templar would specifically target [Trujillo Diaz] upon her repatriation" and (2) "[Trujillo Diaz] has not shown that she could not relocate to another area within Mexico to avoid future harm at the hands of the Knights Templar."

The BIA's first rationale relied entirely on its analysis of Trujillo Diaz's asylum and withholding-of-removal claims—i.e., its rejection of Trujillo Diaz's claim that she would specifically be targeted because of her family membership. *See* BIA Decision at 3 ("[W]e reiterate that there is no reliable evidence that the Knights Templar would specifically target [Trujillo Diaz] upon her repatriation."). Because this finding was based on an abuse of discretion in failing properly to credit Trujillo Diaz's father's declaration, it cannot provide the basis for denying her Convention Against Torture claim.

The BIA failed to explain its alternate rationale for rejecting Trujillo Diaz's prima facie evidence of eligibility for Convention Against Torture relief. The BIA summarily rejected Trujillo Diaz's evidence that she could not relocate in Mexico: "Viewing the evidence as a whole, [Trujillo Diaz] has not shown that she could not relocate to another area within Mexico to avoid future harm at the hands of the Knights Templar." *See* BIA Decision at 3. The BIA did not state why it found Trujillo Diaz's evidence that she could not relocate to be insufficient. Nor did it acknowledge any evidence that it considered in determining that she could safely relocate within Mexico. Though it need not "write an exegesis on every contention," the BIA must "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142–43 (5th Cir. 1984)); *Al Roumy v. Mukasey*, 290 F. App'x 856, 860 (6th Cir. 2008) (concluding that BIA had "heard and thought and not merely reacted" where it explained the evidence presented and explained why the evidence was unpersuasive). "Cursory, summary, or conclusory statements are inadequate." *Daneshvar*, 355 F.3d at 626. Here, the BIA abused its discretion by failing to provide any analysis of the relocation evidence for us to review.

On remand, the BIA should consider the evidence relating to the relocation issue, as we have instructed. *See* 8 C.F.R. § 1208.16(c)(3)(ii) (listing "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured" as one of

the factors a court should analyze in determining whether an applicant has carried her burden); *cf. Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1140 (7th Cir. 2015) ("And though the immigration judge remarked that the Mexican government was trying to control the drug gangs, it is success rather than effort that bears on the likelihood of the petitioner's being killed or tortured if removed to Mexico."). The BIA did not discuss relocation for purposes of asylum and withholding of removal under the INA. Therefore, the BIA should address in the first instance whether Trujillo Diaz can reasonably relocate to another part of Mexico. *See* 8 C.F.R. §§ 1208.13(b)(2), 1208.16(b)(2); *see also Gonzales v. Thomas*, 547 U.S. 183, 185–86 (2006) (This "matter requires determining the facts.").

In addition to considering Trujillo Diaz's relocation evidence, the BIA should also consider her changed-country-conditions evidence. Although the BIA concluded that this evidence did not support her contention that she would specifically be targeted because of her family membership, it did not address the sufficiency of this evidence for purposes of showing that conditions in Mexico had changed. As we have previously explained, "a change in personal circumstances that is unaccompanied by a change in country conditions is insufficient to reopen proceedings." *Zhang v. Holder*, 702 F.3d 878, 879–80 (6th Cir. 2012); *see Maldonado-Torres v. Holder*, 573 F. App'x 474, 476 (6th Cir. 2014) (finding no abuse of discretion where the BIA denied motion to reopen despite applicant's allegations that cartel members abducted his brother and had made a direct threat toward applicant because applicant failed to provide any evidence of changed country conditions in Mexico). Therefore, the BIA should consider the sufficiency of this evidence on remand.

**III**

The BIA's abuse of discretion in failing to credit Trujillo Diaz's father's affidavit undermined its conclusion that Trujillo Diaz had not made a prima facie showing of eligibility for asylum and withholding of removal under the INA. This conclusion also affected the BIA's analysis of whether Trujillo Diaz made a prima facie showing of eligibility for protection under the Convention Against Torture. Further, the BIA abused its discretion in summarily rejecting Trujillo Diaz's argument that she could not safely relocate internally in Mexico for purposes of

showing prima facie eligibility under the Convention Against Torture.  Accordingly, we **GRANT** the petition and **REMAND** to the BIA for reconsideration consistent with this opinion.