NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0102n.06

Case No. 18-3474

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 04, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EDMUNDO SOLANO-ABARCA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before: MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

**MERRITT, Circuit Judge.** This is a cancellation of removal case from the Board of Immigration Appeals. When an alien seeks to secure a discretionary ruling from an Immigration Judge cancelling removal, he or she must show: (1) continuous presence in the country for ten years; (2) good moral character during that period; (3) no convictions for certain enumerated offenses; and (4) that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States." *See* 8 U.S.C. § 1229b(b)(1). The inquiry on the fourth factor focuses on the hardships to qualifying U.S. citizen relatives: the spotlight is on the family's suffering rather than the alien's. Those decisions are reviewed by the Board of Immigration Appeals. After that, our review is limited to questions of law or constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(D).

The Immigration Judge below denied cancellation of removal, and the petitioner appealed to the Board. During the pendency of that appeal, but before the Board issued a decision, the petitioner filed a Motion to Reopen and Remand, claiming that a new qualifying relative's deteriorating medical condition warranted reconsideration of the hardship standard. The Board denied this Motion and affirmed the cancellation hardship finding. The instant appeal focuses only on the denial of the Motion.

The petitioner complains that the Board's decision disregards new and important evidence essential to an assessment of whether exceptional and extremely unusual hardship will befall his qualifying U.S. citizen relatives if he is deported. At the hearing before the Immigration Judge, petitioner presented evidence about *three* qualifying U.S. citizen relatives: his U.S. citizen wife and two biological U.S. citizen children, a boy and a girl. But in the Motion for Remand filed with the Board, the petitioner disclosed that he had a second U.S. citizen daughter who, although she was born *before* the hearing, was diagnosed with a severe medical condition *after* the hearing. He seeks a remand to the Board because he believes that the Board did not properly consider this new evidence the first time around when it issued its decision.

We are guided in this case by a very recent published opinion from this Court, *Hernandez-Perez v. Whitaker*, No. 18-3137, __ F.3d __, 2018 WL 6580478 (6th Cir. Dec. 14, 2018). *Hernandez-Perez* concerned a similar situation where new evidence about qualifying relatives arose late in the game while the petitioner's case was in the appellate pipeline before the Board. Balancing the issues in these cases is difficult because the burden is on the petitioner to show that he or she meets the standard for a discretionary cancellation of removal. But of course, no petitioner can testify as to what medical misfortunes will befall his family in the 36 to 48 months *following* his hearing. The case law, recognizing this reality, contemplates Motions to Remand

and Reopen as a safety valve to address this problem. In this case, the Board failed to meaningfully address this new evidence, choosing instead to berate petitioner for not naming his daughter sooner. But the failure to disclose is irrelevant because no matter when the child was born, her medical problems arose post-hearing. Because the Board abused its discretion as to this Motion, and guided by the principles articulated in *Hernandez-Perez*, we **GRANT** the petition and **REMAND** for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Edmundo Solano-Abarca is a Mexican citizen who came to the United States without inspection in January 2001, when he was eighteen. In 2013, the government commenced removal proceedings against him; Solano-Abarca conceded removability but sought discretionary cancellation of removal under 8 U.S.C. § 1229b(b)(1). The government conceded that Solano-Abarca had been in the United States for ten years, had established good moral character, and had no disqualifying convictions; thus, the only issue was whether Petitioner could establish "exceptional and extremely unusual hardship" under § 1229b(b)(1)(D). The Immigration Court held a hearing on April 4, 2016, and heard testimony from Solano-Abarca, his U.S. citizen wife, and his wife's mother, who resides with the family.

The testimony at the hearing showed that Solano-Abarca and his wife care for three U.S. citizen children, one of whom is not Solano-Abarca's biological child, but who knows Solano-Abarca as his father. As counsel for the government points out, the witnesses were clear in their answers that Solano-Abarca and his wife care for *three* children: two boys and a girl. The oldest child (not Solano-Abarca's biological child, but his wife's biological child) was born in 2006, the son was born in 2008, and the daughter was born in 2011.

The Immigration Judge also noted that Solano-Abarca was twice convicted for driving under the influence, once in 2006 and again in 2011; he attends Alcoholics Anonymous regularly. He is the sole source of support for his family as his wife does not work, and they would not accompany him if he were deported to Mexico. On cross examination, Solano-Abarca admitted to purchasing a green card and a social security number in the past.

On May 24, 2017, the Immigration Judge issued a decision finding all of the witnesses credible. After reciting applicable law, the Judge addressed the substance of the case in less than a page. In the main, the Court found that the petitioner's situation did not meet the standard of "exceptional and extremely unusual hardship," but also made a discretionary finding: "Even if the Court were to find Respondent eligible for cancellation, it would decline to exercise its discretion for the following reasons: Respondent's convictions for drunk driving; Respondent's purchase and use of a false green card and social security number; and the lack of an economic stake in the United States." Solano-Abarca was granted voluntary departure.

On June 21, 2017, Solano-Abarca appealed the decision of the Immigration Judge. But on December 4, 2017, Solano-Abarca's counsel filed a "Motion to Reopen and to Remand." The Motion averred that Solano-Abarca had *four* U.S. citizen children, not three. The Motion disclosed the existence of a fourth child (or more accurately, a third biological child), born in 2015, but did not explain why that child was not discussed at the hearing, instead claiming that certain testimony had referenced this new fourth daughter instead of the daughter born in 2011. The Motion also attached an exhibit from a doctor diagnosing the fourth child born in 2015 with hypotonia and an abnormal brain MRI (letter dated November 10, 2017). The letter did not indicate exactly when the fourth child received this diagnosis, but the Motion represented that it post-dated the hearing

before the Immigration Judge.  The child's birth certificate listed Solano-Abarca as the father and his wife as the mother, but the child has a different last name than either.

On April 23, 2018, the Board of Immigration Appeals issued an order denying the Motion and dismissing the appeal.  The Board first considered the merits component of the hardship finding, and said: "We agree with the Immigration Judge's determination that the respondent did not establish that his removal to Mexico would result in exceptional and extremely unusual hardship to his spouse or children[.]"  The Board then proceeded to a discussion of the Motion, saying, "Turning to the respondent's motion to remand, we do not find any evidence accompanying the respondent's motion to remand which would persuade us to remand proceedings."  Following this inscrutably vague sentence is one paragraph simply reciting the facts in the Motion relating to the fourth child.  In the second paragraph relating to the Motion, the Board couched its denial in *evidentiary* terms, saying:

> The respondent, who is represented by counsel, appears to have provided information relating to another individual in his notice to remand.  The record does not indicate that the respondent has daughter by the name of [Child 4], born on August 8, 2015.  The respondent listed only [Child 1], [Child 2], and [Child 3] as his children on his cancellation of removal application.  When testifying, the respondent named [Child 1], [Child 2], and [Child 3] as his children (Tr. at 25-26).  In light of the foregoing, the respondent's motion to remand will be denied.

So the denial of the Motion did not relate to the applicable hardship standard, but to the fact that the fourth child had not been presented to the Immigration Court in the first place.

On May 21, 2018, Solano-Abarca appealed to the Sixth Circuit.  He sought a stay of removal, but the Motions Panel (Suhrheinrich, Gilman, and Sutton, Circuit Judges) denied the stay in an order dated July 5, 2018.  A request for reconsideration was denied on July 24, 2018.

The posture of Solano-Abarca's current appeal is important.  In his brief, he only attacks the denial of his Motion for Remand rather than the substance of the hardship determination.  The

government contends that we lack jurisdiction over discretionary determinations made by the Immigration Judge, that the Petitioner waived any review of the cancellation application by failing to mention it in his brief, and that the Board did not abuse its discretion in denying the Motion for Remand. The parties continue to dispute whether the existence and medical condition of the fourth child are relevant to this proceeding. The government notes in its brief that prior to the filing of the Motion, the record contained no references to the fourth child. The petitioner's attorney says that the Board did not consider the effects of this new evidence on the applicability of the hardship standard, and points to the birth certificate as uncontroverted proof that the fourth child is the petitioner's daughter. The petitioner also doubles down on the explanation of the trial testimony as referencing the fourth daughter rather than the third.

## II.  ANALYSIS

Jurisdiction in cancellation of removal cases usually hangs by a thread. *See generally Ettienne v. Holder*, 659 F.3d 513 (6th Cir. 2011); 8 U.S.C. § 1252(a)(2)(D). The posture of the instant matter is somewhat unusual; the petitioner is not challenging the Board's hardship determination but is instead attacking the denial of his Motion for Remand. The standard of review for denials of such motions is abuse of discretion. *See Hernandez-Perez*, 2018 WL 6580478, at *7. Following the petitioner's lead, we confine our review of this matter to the Motion. We note in passing that the Immigration Judge's additional discretionary finding coupled with the choice in the petitioner's brief not to attack the hardship-cancellation decision makes a barely reviewable issue even less reviewable. But the denial of the Motion is a separate issue entirely.

First, we agree that the record as it stood before the filing of the Motion was fairly clear that the petitioner's household only contained three children. Petitioner's tax return for the 2015 year listed only three children. Petitioner himself testified at the hearing quite clearly that he only

had three children. He said, in reference to the son born to his wife and another man: "I treat him as I treat my other two children, my own children." In its brief on appeal, the government does not say that the fourth child's birth certificate is invalid but jabs at the fact that the child's last name is not the same as her father or mother. While we agree with the government on what the evidence showed, we do not minimize the difficulties that fact-finding in these cases poses to even the most experienced of attorneys. The record indicates that petitioner's counsel was not fully up to speed on the condition of the children. When petitioner's wife testified about her daughter's hearing problems, counsel for the petitioner said, "Well, can you explain why we haven't submitted any of those documents to the Court, because I didn't know anything about this." Counsel later said, "One thing that I forgot, and I didn't even know, was this hearing, medical issue with their daughter, that just came up. And, clearly, I would have submitted documents, because the Board has said medical condition may not be a decisive factor, but it's an important factor. And I wasn't aware of it until this morning." But while the record is clear that the fourth child's birth preceded the hearing, it is equally clear that the medical problems post-date the hearing.

Timing matters in this kind of case. We must distinguish between scenarios where a petitioner whose cancellation application has been denied: (1) presents the immigration authorities with a "new" qualifying relative; (2) presents the immigration authorities with a new medical problem that a previously disclosed qualifying relative is *now* suffering from; or (3) some kind of hybrid scenario, as here. The takeaway is that when a qualifying relative suffers from a newly arisen medical condition, the petitioner has no control; it goes without saying that taking care of a qualifying relative factors into a discretionary decision about the applicable hardship standard. But

when a petitioner simply forgets to mention a qualifying relative at all without a reasonable excuse, that merits somewhat less sympathy.

An example of the first kind of case is the recent *Hernandez-Perez* decision, where the petitioner discovered a new son concealed from him during the pendency of his immigration case. *Hernandez-Perez*, 2018 WL 6580478, at \*2 (discussing how the new relative was discovered and noting that the child may have been neglected). The second kind of case, where a new medical problem arises, was referenced in the abstract in a Ninth Circuit opinion. *See Fernandez v. Gonzales*, 439 F.3d 592, 601–02 (9th Cir. 2006) ("An example would be the submission of evidence, subsequent to a denial of cancellation of removal, concerning a newly-discovered, life-threatening medical condition afflicting a qualifying relative."). An example of the third kind of case, where the qualifying relative's existence *and* that person's medical condition are both new to the immigration authorities, is another decision from our Circuit. *Ortiz-Cervantes v. Holder*, 596 F. App'x 429, 431 (6th Cir. 2015) ("The BIA added that neither Ortiz nor his attorney raised the issue of a new qualifying relative to the IJ, even though Ortiz's son was born on May 29, 2012, while his previous appeal was still pending before the BIA…Moreover, the evidence submitted concerning his son was not new or previously unavailable.") (internal citation omitted).

In this case, the fourth child was born in August of 2015. The Immigration Judge heard testimony in April of 2016 and rendered a decision in May of 2017. So if this were a case where the petitioner sought a second try before the Board simply because he failed to present evidence of another qualifying relative that he certainly knew of at the first hearing, that might settle this matter. The Board does not usually accept new evidence on appeal. *Hernandez-Perez*, 2018 WL 6580478, at \*7. But while it is clear that the Petitioner should certainly have submitted evidence that his child *was* a qualifying relative at the hearing, the record does not reflect that the relevant

*medical evidence* was available at the time of the hearing. In fact, counsel for Solano-Abarca has represented that the opposite is true: "[T]he medical evidence regarding Respondent's daughter's medical condition was not available at the time of Respondent's individual hearing on April 4, 2016, and it could not have been discovered earlier." The letter from the doctor is dated November 10, 2017. That puts this matter closer to box number two than box number one. So the real question in this case is whether the Petitioner's failure to notify the immigration authorities that his child existed at the time of the hearing vitiates his ability to present "evidence, subsequent to a denial of cancellation of removal, concerning a newly-discovered, life-threatening medical condition afflicting a qualifying relative." *Fernandez*, 439 F.3d at 601–02. More to the point, the question is whether the Board abused its discretion in ruling on the Motion.

Both *Ortiz-Cervantez* and *Hernandez-Perez* are instructive. Again, timing is critical. In *Ortiz-Cervantez*, the Immigration Judge heard testimony in January 2010 and issued a decision in September 2011. *Ortiz-Cervantes*, 596 F. App'x at 430. The petitioner's son was born in May 2012 and hospitalized with asthmatic issues three times from October 2012 to March 2013. The Board remanded in May 2013 on a voluntary departure question, and a new hearing was held on that same issue in July 2013. The petitioner disclosed his son's asthma only upon appealing the July 2013 order of the Board. So he had several chances to say something and didn't. Thus, the panel in *Ortiz-Cervantes* was quite right to say that "the evidence submitted concerning his son was not new or previously unavailable." *Id.* at 431. The import of that case is that Ortiz-Cervantes should have told the Board earlier about his son. *Id.* at 433 ("The BIA did not abuse its discretion in this regard because it is undisputed that Ethan was born March 29, 2012, while Ortiz's first appeal to the BIA was pending and thus prior to the second hearing before the IJ."). Both the existence of the new qualifying relative *and* that relative's medical condition went undisclosed

during the pendency of multiple hearings. That is not true here – the Motion for Remand was filed a month after the doctor wrote the letter (Letter Dated November 10, 2017, Motion dated December 4, 2017).

*Hernandez-Perez* teaches that "[t]he issue before us then is whether the evidence about the hardship to [the new qualifying relative] was available or could have been discovered at the time of the merits hearing before the immigration judge in August 2015." *Hernandez-Perez*, 2018 WL 6580478, at *7. And the answer to that question on these facts is no. And as *Hernandez-Perez* notes, the Board must accept facts in a Motion to Reopen as true unless it finds them inherently unbelievable. *Id.* at 8. The evidence arose after the hearing and was promptly disclosed – so it should have been considered meaningfully.

The Board's exploration of the evidence presented by the Motion leaves much to be desired. In the main, the Board treated this as an evidentiary matter – the fact that Solano-Abarca failed to present this child below ended the inquiry. But the failure to present the existence of the child has no effect whatsoever on the timing of the medical condition affecting that child. Furthermore, the Board simply said that evidence of the existence of the fourth child here was not in the record below. It said nothing about whether that harm rose to the level of exceptional and extremely unusual hardship: "Turning to the respondent's motion to remand, we do not find any evidence accompanying the respondent's motion to remand which would persuade us to remand proceedings." This is insufficient. "[E]ven if this were a thinly disguised attempt to relitigate the merits, the BIA would not be excused from explaining its reasoning." *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 968 (9th Cir. 2006) (internal citation and quotation marks omitted) (granting petition where medical issue arose after hearing).

An abuse of discretion in this context occurs when the Board makes a decision without a rational explanation, departs from established policies, or bases its decision on invidious discrimination. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). Here, the record shows that the petitioner could not have presented the *medical evidence* in question to the Board. Reaching this conclusion does not mean that we excuse or countenance the failure of the petitioner to disclose this fourth child on his tax returns or to the Immigration Judge at the hearing. But even assuming that petitioner had included this fourth child in the record, the medical evidence would still have arisen after the hearing. Petitioner's counsel did exactly what the petitioner in *Ortiz-Cervantes* did not. The Board's order was not a rational explanation because it simply recited what the parties already knew rather than discussing the import of those facts in light of the hardship standard.

### III. CONCLUSION

Cancellation of removal cases poses unique challenges. *See generally In Re Andazola-Rivas*, 23 I. & N. Dec. 319, 334 n.3 (BIA 2002) (Osuna, Board Member, dissenting). But the petitioner has chosen to frame this appeal solely from the perspective of the motion to remand rather than the substance of the discretionary determination. Because the Board abused its discretion by failing to discuss the fourth child's new medical evidence in the context of the applicable hardship standard, we **GRANT** the petition and **REMAND** to the Board for further proceedings consistent with this opinion.

**NALBANDIAN, Circuit Judge, dissenting.** The reason the Board did not consider the Petitioner's new medical evidence is simple: The Board did not believe the Petitioner's claim that the evidence pertained to one of *his* children. Because the Board was entitled to disbelieve the Petitioner and did not abuse its discretion in doing so, I dissent.

The majority frames the issue in this case as whether the Petitioner could introduce new medical evidence about one of his children after the immigration judge denied his application for cancellation of removal. So, naturally, the majority's analysis focuses on timing. Specifically, it focuses on when the evidence became available, and when the Petitioner informed the Board about the evidence.

But the Board's decision did not rest on the timing of the Petitioner's submission. Instead, the Board's decision was based on its finding that the evidence did not relate to one of his children. More precisely, the Board did not believe that the Petitioner had a fourth child suffering from a new medical disorder, as he alleged in his motion to reopen. It makes sense, therefore, that the Board did not consider the Petitioner's new medical evidence. It had no reason to after finding that the evidence did not pertain to a qualifying relative under 8 U.S.C. § 1229b.

Consequently, the cases the majority relies on—which analyze whether the alien's newly submitted evidence was timely—are beside the point. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 316 (6th Cir. 2018); *Ortiz-Cervantes v. Holder*, 596 F. App'x 429, 431 (6th Cir. 2015); *Fernadez v. Gonzales*, 439 F.3d 592, 601–02 (9th Cir. 2006). In those cases, the authenticity of the evidence was never in dispute. In this case, however, it is.

At bottom, the issue here is whether the Board could discredit the Petitioner's factual allegations in his motion to reopen. Our inquiry is governed by the following rule, which we recently adopted from the D.C. Circuit: "[I]n adjudicating a motion to reopen, the BIA 'must accept

as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be inherently unbelievable.'" *Trujillo Diaz v. Sessions*, 880 F.3d 244, 252 (6th Cir. 2018) (quoting *Haftlang v. INS*, 790 F.2d 140, 143 (D.C. Cir. 1986)). "The purpose of this rule is to ensure that the applicant has had her day in court to demonstrate the truth of the facts alleged." *Trujillo Diaz*, 880 at F.3d at 252 (citing *Haftlang*, 790 F.2d at 143). The question is whether the Board determined that the Petitioner's facts were "inherently unbelievable" by making specific findings. *Trujillo Diaz*, 880 F.3d at 253.

In *Trujillo Diaz*, we held that the Board abused its discretion in failing to credit a declaration that the petitioner had submitted in support of her motion to reopen. *Id.* at 254. In so holding, we noted that the Board did not find the declaration to be inherently unbelievable. *Id.* at 253. Indeed, the Board did not "make any findings that would indicate that it reached [that] conclusion." *Id.*

For example, the Board did not find any "internal inconsistencies" in the declaration; it did not find that the declaration was "at odds with other materials" submitted by the Petitioner; and it made no determination that the affidavit was "incompatible with some other incontrovertible piece of evidence." *Id.* "Because the BIA made no such determination . . . it should have accepted as true the facts contained in the declaration." *Id.*

But here, the Board made several findings indicating that it concluded the Petitioner's facts were inherently unbelievable. In particular, the Board concluded that there was nothing in the record to suggest that the Petitioner had a daughter named Nayeli Jazmin Vazquez, born on August 8, 2015. In supporting that conclusion, the Board found that the Petitioner "listed only Jorelyse Aliana Solano, Alexayier Atrevian Solano, and Adrian Wetzel as his children on his cancellation of removal application." [A.R. at 4–5.] It also found that, when testifying, the Petitioner did not

- 13 -

state he had a fourth child named Nayeli Jazmin Vazquez. Indeed, when the Petitioner's lawyer directly asked him how many children he had, he unequivocally responded, "three," and named Jorelyse, Alexayier, and Adrian as his children. [*Id.* at 153–54.] Finally, the Board noted that Nayeli's birthdate did not correspond to any of the birthdates that the Petitioner provided of his children on his application or at his hearing.

In this case, the Board did what it failed to do in *Trujillo Diaz*: It made exactly the type of findings that we said would constitute a determination that the Petitioner's facts were inherently unbelievable. That is, it found the Petitioner's claim that he had a fourth child named Nayeli to be "at odds with" or "incompatible with" the incontrovertible record evidence. And because the Board's finding was supported by substantial evidence, it should have survived our review. *See Dada v. Holder*, 516 F. App'x 521, 523 (6th Cir. 2013) (explaining that "[w]e review the BIA's . . . factual findings for substantial evidence.")

Accordingly, I would hold that the Board did not abuse its discretion in denying the Petitioner's motion to reopen.