<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 20a0650n.06

No. 19-4109

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Nov 16, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AMIR FRANCIS SHABO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: COOK, BUSH, and NALBANDIAN, Circuit Judges.

PER CURIAM. Amir Francis Shabo, through counsel, petitions the court to review an order of the Board of Immigration Appeals (BIA) denying his motion to reopen his removal proceedings.

Shabo is a native and citizen of Iraq. He came to the United States as a refugee in May 1985, and his status was adjusted to lawful permanent resident on his date of entry. In 1992, Shabo was convicted of delivery of cocaine in Michigan, and he served sixty months of imprisonment. In 1994, the Immigration and Naturalization Service served Shabo with a notice to appear, charging him with removal as a person who had been convicted of both an aggravated felony and a controlled-substance offense. In 1997, an immigration judge ordered Shabo's removal to Iraq, and the BIA dismissed his appeal. But because Iraq was not then issuing travel documents, Shabo was not removed, and he has remained in the United States ever since.

In 2017, Shabo filed a motion with the BIA to reopen his removal proceedings and stay removal based on changed country conditions in Iraq. Seeking protection under the United Nations Convention Against Torture (CAT), Shabo claimed that he was likely to be tortured or murdered if he were removed to Iraq because persons who have lived in the United States are treated as apostates. He also claimed that, as a Chaldean Christian, he was likely to be tortured by the Islamic State (ISIS). The BIA denied Shabo's motion to reopen, and we dismissed Shabo's petition for review of that order based on jurisdictional grounds that the Supreme Court of the United States later abrogated. *See Shabo v. Sessions*, 892 F.3d 237 (6th Cir. 2018), *abrogated by Nasrallah v. Barr*, 140 S. Ct. 1683 (2020).

In June 2019, Shabo filed a second motion to reopen with the BIA, again seeking a stay of removal under the CAT based on changed country conditions in Iraq. Shabo claimed again that, as a Chaldean Christian, he would be targeted for torture or murder by ISIS. He also said that he was likely to be tortured by the Iraqi government and government-supported militias. Shabo backed his motion with declarations by various scholars and human rights activists with knowledge of conditions in Iraq.

Generally speaking, these experts opined that though ISIS has been defeated as an occupying force in Iraq, individual members and cells of ISIS remain active and commit acts of terrorism against religious minorities and persons who appear to have been "Westernized" or who appear to have some affiliation with the United States. These experts also suggested that returnees such as Shabo who lack fluency in Iraqi Arabic and proper identification documents are often suspected of being affiliated with ISIS by government security forces and militias, subjecting them to a risk of being detained and tortured in government detention facilities.

The Department of Homeland Security (DHS) opposed Shabo's motion with its own experts who said generally that Christians in Iraq have returned to areas formerly occupied by ISIS

and have been able to freely and openly resume their religious activities, that Iraqi security forces have been working to secure Christian neighborhoods, and that, although there are isolated instances of violence against Christians, the Iraqi government is active in rooting out, detaining, and prosecuting ISIS members. In other words, according to these experts, the defeat of ISIS has led to increased security for Christians in Iraq. They also maintained that the existence of anti-American or anti-Western animus in Iraq is overstated given America's assistance in defeating ISIS and the withdrawal of the American military from Iraq.

The BIA denied Shabo's motion to reopen, finding that it was untimely and number barred or, alternatively, that Shabo failed to demonstrate prima facie eligibility for relief under the CAT because he did not show that it was more likely than not that he would be subjected to torture by or with the acquiescence of the Iraqi government. The BIA concluded further that "the voluminous background evidence attached to DHS's opposition reflects that conditions in Iraq have improved dramatically in the last 2 years for Chaldean Christians, particularly since the Iraqi government announced the defeat of the Islamic State in December 2017."

Shabo filed a timely petition for review. He contends that in denying his motion to reopen, the BIA overlooked his evidence demonstrating changed conditions in Iraq and that it "seriously mischaracterized" the DHS's evidence. He contends that his evidence that Christians in Iraq face a substantial threat of persecution and torture was more probative and compelling than the evidence in opposition submitted by DHS.

A noncitizen is limited to one motion to reopen, to be filed within ninety days of the entry of the final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i); *Bi Feng Liu v. Holder*, 560 F.3d 485, 487 (6th Cir. 2009). The time and numerical limitations on motions to reopen, however, do not apply when an applicant seeks withholding or deferral of removal under the CAT based on material and previously unavailable evidence of changed country conditions. *See* 8 U.S.C.

§ 1229a(c)(7)(C)(ii); *Thiam v. Barr*, 787 F. App'x 327, 328 (6th Cir. 2019). An applicant seeking relief under the CAT must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

We review the BIA's denial of a motion to reopen for an abuse of discretion. *See Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). An abuse of discretion occurs if "the denial of the motion to reopen was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (internal brackets and ellipses omitted) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

There are generally three grounds on which to deny a motion to reopen: "failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Zhang*, 543 F.3d at 854 (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)). "When the board denies relief on a particular ground, we review only that ground." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249 (6th Cir. 2018).

"[I]n adjudicating a motion to reopen, the BIA 'must accept as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be inherently unbelievable.'" *Id.* at 252 (quoting *Haftlang v. INS*, 790 F.2d 140, 143 (D.C. Cir. 1986)). If the BIA regards the alien's evidence as "'inherently unbelievable,' it must articulate this conclusion." *Zhu v. Barr*, No. 19-4102, --- F. App'x ---, 2020 WL 5946088, at *3 (6th Cir. Oct. 7, 2020) (citing *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 319 (6th Cir. 2018)). The BIA need not "recite . . . magic words every time it denies a motion to reopen on evidentiary grounds," but it must "adequately indicate[] its finding that new evidence was inherently unbelievable." *Dieng v. Barr*, 947 F.3d 956, 963 (6th Cir. 2020). Otherwise, "evidence of changed country

conditions must be accepted as true." *Zhu*, No. 19-4102, --- F. App'x, at *3 (citing *Trujillo Diaz*, 880 F.3d at 252).

Here, the BIA denied Shabo's motion to reopen on two grounds. First, citing 8 C.F.R. § 1003.2(c)(3), the Board found that "[a] motion to reopen to apply for Convention Against Torture relief does not fall within an exception to the time and number limits for motions." That section, however, permits motions based on changed circumstances "for asylum *or* withholding of deportation." 8 C.F.R. § 1003.2(c)(3)(ii) (emphasis added). Related regulations make clear that the CAT provides a basis for withholding of removal.[1] *See* 8 C.F.R. § 1003.23(b)(4)(i) (explicitly listing motions for withholding of removal brought before an Immigration Court under the CAT as exempt from the time and number limits); 8 C.F.R. § 208.16(c) (setting the burden of proof for applicants seeking withholding of removal under the CAT and enumerating some relevant categories of evidence). There is no reason to think the availability of "withholding of deportation" under § 1003.2 excludes motions brought under the CAT. And neither the Board nor the government offers any support for a contrary reading.

Applying these regulations, our cases have routinely treated a motion for changed country conditions under the CAT as an exception to the time and number limitations. *See, e.g.*, *Trujillo Diaz*, 880 F.3d at 248–49; *Thiam*, 787 F. App'x at 328; *Soumare v. Barr*, 799 F. App'x 361, 364 (6th Cir. 2020). Therefore the BIA erred in finding that Shabo's CAT claim alleging changed country conditions did not fall within an exception to the time and number limitations.

---

[1] Although the applicable regulations use both "deportation" and "removal," these terms describe the same immigration proceedings. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 n.1 (2006) ("What was formerly known as 'deportation' is now called 'removal' . . . ."); *United States v. Zuniga-Guerrero*, 460 F.3d 733, 735 n.1 (6th Cir. 2006) ("Because of amendments to the immigration laws, the broader term 'removal' has replaced 'deportation'") (citing *Fernandez-Vargas*, 548 U.S. at 33 n.1).

Second, the BIA denied Shabo's motion to reopen for failure to establish prima facie eligibility for relief under the CAT. In crediting all of the government's evidence and merely stating that Shabo "has not shown a material change in Iraq or presented sufficient evidence that he is more likely than not to be subjected to torture," the BIA failed to accept as true Shabo's supporting evidence—declarations detailing alleged changed country conditions in Iraq. And it failed to state that Shabo's evidence was inherently unbelievable or articulate findings from which we could reasonably infer that it found the evidence to be inherently unbelievable, such as if it was "self-serving and speculative," *Dieng*, 947 F.3d at 963, "internal[ly] inconsisten[t]," *Trujillo Diaz*, 880 F.3d at 253 (citations omitted), "at odds with other materials" Shabo submitted, *id*., or "incompatible with some other incontrovertible piece of evidence," *id*. We require the BIA to make these findings on the record; we will "not make interpretive leaps on the Board's behalf." *Hernandez-Perez*, 911 F.3d at 319. Accordingly, the BIA abused its discretion. *See Trujillo Diaz*, 880 F.3d at 254–56.

We thus **GRANT** Shabo's petition for review, **VACATE** the BIA's order, and **REMAND** this case to the BIA to re-evaluate Shabo's motion.